**BUSH BUILDING COMPANY, Appellant,**

v.

**CITY OF BARBOURVILLE, KENTUCKY, Appellee.**

No. 13581.

United States Court of Appeals
Sixth Circuit.

July 27, 1959.

Howard F. Butler, Carmack Cochran, Nashville, Tenn. John L. Davis, James Park, Lexington, Ky. for appellant.

Earl S. Wilson, Louisville, Ky., Milton J. Luker, London, Ky., for appellee.

Before MARTIN, Chief Judge, ALLEN, Circuit Judge, and MATHES, District Judge.

PER CURIAM.

This case is before the court upon petition for rehearing. All points raised were fully considered at the hearing herein. We shall discuss one contention only, namely, that rehearing must be granted because the District Court based its award of $150,000 damages upon the testimony of Mason, witness for the city, whose estimate of the cost of repairing sewer lines "in the so-called sand area" was $97,629.26. This item included $50,-214.72 for wellpointing which appellee conceded in its brief was probably too high.

This reiterated contention has no merit. The trial court's clear and careful opinion, in conformity with the rules, was ordered to be treated as the court's findings of fact and conclusions of law. The opinion, which covers 20 printed pages, contains many specific findings, including the findings of determinative fact essential to support the judgment. The opinion neither states nor indicates that the

court particularly relied upon the testimony again attacked in this petition for rehearing. The court quotes with equal emphasis several widely varying estimates of the cost of repairs to sewer lines needed in the same area.

The award of $150,000 damages included many items and, as the court specifically stated, it covered conditions in the large areas flowing to pump stations Nos. 2 and 3, while the estimates above mentioned applied only to the area flowing into pump station No. 1.

The principal item upon which the District Court based its award was the excessive amount of infiltration of sand and ground water through the entire area. Infiltration of ground water into the sewer lines reduces the adequate space which would be available for sewage. The contract accordingly required that the joints of the pipes be tightly sealed with a hot-poured jointing compound. The contract further emphasized that the closeness of the joints was necessary, that the trenches should be kept free from water until the mortar had set, and that no pipe should be laid in the absence of an inspector.

The A. S. T. M. designation C–12–51T requires that the trenches be dry, that the pipe be aligned in the trench so that it is true to line and grade, that the joints be carefully adjusted and filled with the jointing material and the trenches be kept water-free during jointing and for a sufficient period thereafter to allow the jointing material to become fully set and completely resistant to water penetration.

The record supports the finding of the District Court that these requirements were not complied with.

The maximum allowable seepage of ground water contended for by appellant is 117,600 gallons for a 24-hour period. A reinspection of the entire system made on February 3, 1956, showed by actual measurement that an aggregate of more than 600,000 gallons was flowing into the three lift stations at a time when no water was going in the tops of the manholes. Numerous eyewitnesses stated that the trenches were not kept free from water and that work was repeatedly done in the absence of the inspector. The item as to wellpointing is immaterial in comparison with the testimony establishing that at various places throughout the 9 miles of sewer pipe constituting the entire system there was excessive infiltration of ground water. This infiltration will in the future cause expensive problems.

We are impressed by the fact found by the court that the contractor submitted a bill to the city for $3,696.37 for repairing a break in the sewer on Short Street which covered the relaying of 40 feet of sewer lines. This figures out that the contractor charged the city for this not unusually difficult work at the rate of $92.41 per lineal foot. At this figure, to relay the 3,540 feet of sewer lines in the area flowing to pump station No. 1 would cost over $325,000.

The findings of the District Court are not only not erroneous but are supported by cogent evidence. The amount of the judgment is fair and moderate.

The petition for rehearing is denied.